ERB vs. COLE & DOW.

1. FRAUDULENT CONVEYANCE:

The fact that a person selling his goods is at the time indebted, and does not intend to apply the money he receives for them to his debts, is not of itself sufficient to establish a fraudulent or dishonest purpose. A sale, to be void as to creditors, must be made with the intent to hinder, delay or defraud them, in which the purchaser must participate by purchasing with a view to abet the fraudulent design.

2. ————.

Fraud must be proven; circumstances of mere suspicion, leading to no certain result, are not sufficient ground to establish it.

3. ————.

It is incumbent on a party who attacks a conveyance on the ground that it was made to defraud creditors, to show that if it had not been made the goods would have been subject to seizure and sale upon execution.

APPEAL from *Pulaski* Circuit Court.

Hon. SAM. W. WILLIAMS, Special Judge.

*Ford*, for appellant.

*Dooley, contra.*

HARRISON, J.:

On the 11th of May, 1875, Cole & Dow brought suit against William Wolfson, and attached for their debt a small stock of goods in the possession of Mrs. H. Erb, who interpleaded—claiming the same under a purchase from the defendant. The jury, in the trial of the interplea, found the goods subject to the attachment, and Mrs. Erb filed a motion for a new trial, which was overruled, and, after judgment against her, appealed.

Mrs. Erb, in support of her interplea, testified that Woflson, who was her brother, had kept a small grocery store in Little Rock; that he was declared a lunatic and her husband, Seigfred Erb, appointed his guardian by the Probate Court; and he by its order took charge of the business, to which she, as clerk for her husband, attended free of charge, her husband being employed elsewhere; that previous to such appointment of her husband she was engaged in stamping, dress-making and teaching needle work, but after it they moved into the building where her brother's business was carried on. Wolfson was sent to a lunatic asylum, but, having returned, he was, on the 15th of April, 1875, declared by the Probate Court of sound mind; and that on the 17th of the same month, she, in good faith, purchased the goods from him, paying him $174.70—their full value, therefor, with money she had earned by her own labor; and she had since conducted the business in her own name, but without any other ostensible change in it, and had given no notice of the purchase. She knew at and before the time of the purchase, she said, that Wolfson was indebted to the plaintiffs, and that it was his intention to go to Europe, having been so advised by his physician, and to use the money for which he sold the goods to defray his expenses, and that none of it would be paid to the plaintiffs. Wolfson left in a day or two after the sale, and had not returned. Other evidence to the same purport was adduced by her.

The only evidence offered by the plaintiffs, was: that Mrs. Erb, after Wolfson became insane, came to plaintiffs, and pleading poverty, with tears in her eyes, besought them to allow her husband to be appointed his guardian and carry on the business for him, promising that the proceeds of the business, after supporting him, should be applied to the payment of their debt.

The appellant objected to the following instruction to the jury:

"If the defendant sold the goods attached, to Mrs. Erb, the interpleader, he being at the time indebted to the plaintiffs, with intent to hinder, delay or defraud his creditors, and the interpleader, with full knowledge of such fraudulent intent, and with purpose of mind to aid and forward such fraudulent intent, to enable Wolfson to defraud plaintiffs or other creditors, bought the goods of defendant, then the transaction on her part is tainted with fraud, and she cannot hold the goods against the plaintiffs, or prior creditors of Wolfson, even though she paid Wolfson for them."

This instruction, as an abstract proposition of law, is unquestionably correct, but we are unable to see the slightest evidence in the case that Wolfson sold the goods with the object or purpose of avoiding the payment of his debt to the plaintiffs, or delaying or hindering them in the collection of it. The fact that a person selling his goods, is at the time indebted, and does not intend to pay the money he receives for them to his creditor, is not a circumstance, sufficient of itself, from which fraud or a dishonest purpose may be inferred. A sale to be fraudulent as to creditors must be made with the intent to hinder, delay or defraud them, in which purpose the purchaser must participate by purchasing with the view and aim to aid and forward it. *Dardenne* v. *Hardwick*, 9 Ark., 482; *Christian* v. *Greenwood*, 23 Ark., 258; *Galbreath & Co.* v. *Stewart and wife*, 30 Ark., 417.

Fraud must be proven; circumstances of mere suspicion, leading to no certain results, says Judge Story, are not a sufficient ground to establish fraud. 1 Sto. Eq., sec. 190.

So far from any design appearing on the part of Mrs. Erb to aid the defendant to defraud, hinder, or delay his creditors, no such design on his part appears, but his sole object in the sale seems to have been to obtain the means of going to Europe in search of health.

A fraudulent intent will never be imputed to an act that may have as well occurred from a good as a bad motive. *Dardenne & Hardwick, supra.*

As the plaintiffs attacked the sale, as made to hinder, delay or defraud the creditors of the defendant, it was incumbent on them to show that if it had not been made, the goods would have been subject to seizure and sale upon execution, for if not they could not have been defrauded or injured. *Hempstead* v. *Johnson,* 18 Ark., 123; *Clinton* v. *Estes,* 20 Ark., 216.

He was entitled, when the debt sued on was contracted, to hold personal property to the value of $2,000 exempt from execution, and if he had no other property, and there was no evidence that he had, the goods were exempt from execution.

The judgment of the court below is reversed, and the cause remanded that a new trial may be had.