MAX GLANTZ *vs.* SAMUEL E. GARDINER, Deputy Sheriff.

JUNE 6, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Baker, JJ.

*(1)   Sales in Bulk Act.*

Where the Sales in Bulk Act requires the performance of certain acts in the carrying out of such a sale, and declares that the failure to perform these acts will render the transaction fraudulent in law, this is not the enactment merely of a rule of evidence, but a declaration of substantive law that the non-observance of certain statutory provisions constitutes fraud in law.

*(2)   Sales in Bulk Act.*

Pub. Laws, cap. 387, passed April 14, 1909, "An act to prohibit sales of merchandise in bulk in fraud of creditors," making a transfer of a stock of merchandise in bulk fraudulent and void as to the transferrer's creditors unless the transferee "demands and receives from the transferrer a written list of the names and addresses of the creditors of the transferrer and certified by him, under oath, to be to the best of his knowledge and belief, a full, accurate and complete list of his creditors and unless the transferee shall, at least five days before such transfer, notify personally or by registered mail, every creditor whose name and

address are stated in said list of the proposed transfer," does not make the purchaser responsible for any incorrectness in the list, and where a transferee has complied with the statutory requirements, the sale is not void, although he may learn before the transfer that the list received by him was not in fact " a full, accurate and complete list."

(*3*)    *Sales in Bulk Act.*

*Semble:*  Pub. Laws, cap. 387, passed April 14, 1909, the " Sales in Bulk Act," is in effect an addition to sec. 1 of cap. 253 of the General Laws relating to conveyances in fraud of creditors, and such a sale in bulk, while it may comply with the requirements of cap. 387, is open to inquiry as to the existence of fraud in fact.

REPLEVIN.   Certified under Cap. 298, Sec. 4, General Laws, 1909.

BAKER, J.   This is an action of replevin brought by the plaintiff in the Superior Court for Providence County to recover possession of certain goods attached by the defendant as a deputy sheriff of said county.   To this the defendant pleads *non cepit* and for a second plea, " that the said goods and chattels in said declaration mentioned were then and there and now are the property of one Frank S. Lockhart *alias,* and as the property of said Frank S. Lockhart *alias,* were attached and held in custody by the said defendant under and by virtue of a writ of attachment issued out of the Superior Court " in said county " at the suit of Alphonso Brickett against said Frank S. Lockhart *alias.*"   The parties thereafter filed in the office of the clerk of said Superior Court for said county an agreed statement of facts, whereupon the cause was certified to this court for hearing and determination in accordance with the provisions of Section 4 of Chapter 298 of the General Laws of 1909.

The agreed statement of facts shows that on the 19th day of December, 1916, the plaintiff, Max Glantz, paid to said Frank S. Lockhart the sum of one hundred dollars and received from Lockhart the following written instrument:

"Received of M. Glantz one hundred ($100.00) dollars, deposit on sale of all household furniture contained in stores Nos. 605–613 Westminster Street, also in storehouse in rear, also Columbia truck. Balance due thirty-nine hundred dollars ($3900.00) to be paid in full December 22, 1916.

                    (Signed)     FRANK S. LOCKHART.
In presence of
    WILLIAM A. REINER.''

Thereafter, on the same day, said plaintiff consulted Alberic A. Archambault, Esquire, an attorney at law, and as a result of his advice the following memorandum was on the 20th day of December, 1916, written on the foregoing instrument, to wit: "Time on this agreement extended to December 27, 1916, by mutual agreement.

                    (Signed)     F. S. LOCKHART.
                                 MAX GLANTZ.''

On the same 20th day of December, 1916, the plaintiff demanded from the said Lockhart a written list of the names and addresses of his creditors and on the same day received from him a written list giving names, addresses and amounts, signed and sworn to by said Lockhart as "a true, full, accurate and complete list" of his creditors "and the amounts due each of them" "to the best of his knowledge and belief." The list included six names and addresses and amounts of indebtedness aggregating $796.21, and in addition the following, "City of Providence, taxes, amount not known." On said December 20th the plaintiff sent by registered mail a letter to each of said creditors, named in said list, giving notice that said Frank S. Lockhart had entered into an agreement with said Max Glantz for the sale of all his stock of furniture and house furnishings, that the transfer of title

would take place on December 27, 1916, at 9 o'clock A. M., and requesting the addressee to present his claim against said Lockhart to him, said Glantz, before December 27, 1916. On December 21, 1916, the plaintiff inserted in the *Evening Bulletin* of that day the following notice:

## " LEGAL NOTICE

Frank S. Lockhart, doing business at 605–613 Westminster Street, Providence, R. I., will transfer his entire stock of furniture to Max Glantz, Wednesday, December 27, 1916, at 9:00 A. M."

Prior to December 27, 1916, accounts and claims against said Frank S. Lockhart were filed with Max Glantz and his attorneys, amounting to $2,186.48, all of which were paid by Glantz on said 27th day of December before the transfer of the title to him of said furniture and house furnishings, and which were all the claims against said Lockhart of which said Glantz and his attorneys had knowledge at the time of the transfer.

In addition to the $100 deposit receipted for on December 19, Glantz paid Lockhart $1,000 on December 22, and on said December 27, $713.52, making in all $1,813.52 so paid, which together with the $2,186.48 paid to Lockhart's creditors, made up the total purchase price of $4,000.

Said Alphonso Brickett was a creditor of said Lockhart prior to and at the time of said transfer, but his claim was not included in the list delivered by Lockhart and was not filed with said Glantz or his attorneys prior to said transfer, and neither of them had any knowledge of such claim until several days after December 27.

Chapter 387 of the Public Laws was passed April 14, 1909, and is entitled, "An Act to prohibit Sales of Merchandise in Bulk in Fraud of Creditors." Section 1 thereof is as follows: " The transfer of the major part in value or the whole of a stock of merchandise and fixtures, or merchandise or fixtures, otherwise than in the

ordinary course of trade and in the regular and usual prosecution of the transferrer's business, whether in one or more parcels or to one or more persons, provided the transfer is all part of substantially one transaction or proceeding or occurs substantially at one time, shall be fraudulent and void as against all persons who are creditors of the transferrer at the time of such transfer unless the transferee demands and receives from the transferrer a written list of the names and addresses of the creditors of the transferrer and certified by him, under oath, to be, to the best of his knowledge and belief, a full, accurate, and complete list of his creditors; and unless the transferee shall, at least five days before such transfer, notify personally or by registered mail, every creditor whose name and address are stated in said list of the proposed transfer.''

The precise question presented by the agreed statement and as argued by the counsel of both parties in their briefs is whether the transfer of said goods and chattels. by said Lockhart to the plaintiff on December 27, 1916, was under the provisions of Section 1 of said Chapter 387 of the Public Laws, fraudulent and void as to said Alphonso Brickett.

Within the last twenty years nearly all, if not all, of the States have enacted statutes regulating the sale of merchandise in bulk. This widespread legislation at least implies a general belief in the existence of a widespread evil requiring legislative control. While these statutes are similar in general purpose, they differ in phraseology, both in their requirements of the parties to such sales and particularly in the language which declares the effect of noncompliance with the provisions of these acts. '' That evil is the tendency and practice 'of merchants who are heavily in debt to make secret sales of their merchandise in bulk for the purpose of defrauding creditors.'' *Wright* v. *Hart,* 182 N. Y. 330, 346.

A convenient classification of these laws into five groups, based upon the different requirements imposed upon the parties to such sale, may be found in *Kidd, Dater Co.* v. *Musselman Grocer Co.,* 217 U. S. 461, 467–469. These requirements vary from the simple one by which a prospective vendor is compelled to have recorded from five to ten days previous to the actual sale in the town clerk's office of the town in which he conducts his business, a notice of his intention to make such sale, describing the property to be sold, the condition of such sale and the parties thereto, to the more onerous ones of the preparing by the vendor and vendee together of an inventory of the property and its cost, and of requiring the vendee to demand and receive sworn lists of the vendor's creditors, with their addresses and the respective amounts due them, and to notify these creditors of his intended purchase, and in a few instances to see that the purchase price is applied, so far as necessary, to the payment of the vendor's creditors.

As to the effect of a failure to comply with the requirements of these statutes they fall into two classes, first, those acts in which the sale is declared fraudulent and void; second, those acts in which the sale is declared presumptively fraudulent and void. It is reasonable to infer that these different acts vary much as effective instrumentalities in checking actual fraud. The courts differ in their construction of the acts in the second class, some holding that they simply prescribe a rule of evidence, throwing the burden of showing good faith on the purchaser with the right to introduce any evidence pertinent to this question as in *Thorpe* v. *Pennock Mercantile Co.,* 99 Minn. 22, and *Fisher* v. *Hermann,* 118 Wis. 424, while others restrict the evidence to the showing of a compliance with the requirements of the statute. *Moore Dry Goods Co.* v. *Rowe & Carithers,* 99 Miss. 30; *Cantrell* v. *Ring,* 125 Tenn. 472.

The statute of this State belongs to the first class.  It provides in effect that the transfer of " the whole of a stock of merchandise and fixtures " in bulk in one transaction " shall be fraudulent and void as against all persons who are creditors of the transferrer at the time of such transfer unless the transferee " does certain things. That is to say, without any regard to the solvency of the vendor, or the fairness of the purchase price to be paid, or the good faith of the vendor and vendee, and, although the transaction may not be fraudulent in fact, it will be fraudulent and void in law so far as the vendor's creditors are concerned unless the vendee or transferee does the things required of him by the provisions of the statute.  In other words, in order to guard against the commission of actual fraud in the class of sales with which it deals, the law regulates them by requiring the performance of certain acts in the carrying out of such a sale and declares that the failure to perform these acts will render the transaction fraudulent in law.  It is obvious that this is not the enactment merely of a rule of evidence but a declaration of substantive law that the nonobservance of certain statutory provisions constitutes fraud in law. See *Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.,* 131 Ga. 1, 16, and *Pennell* v. *Robinson,* 164 N. Car. 257.

Such laws have generally been upheld as a justifiable use of the police power.  As such statutes declare sales in bulk fraudulent and void if the regulations governing such sales are not complied with, it is clearly implied and must inevitably follow that, if these regulations are complied with, the sale or transfer is not fraudulent and void under these statutes.  As already appears, said Chapter 387 makes a transfer or sale of a stock of merchandise in bulk fraudulent and void as to the transferrer's creditors unless the transferee or purchaser " demands and receives from the transferrer a written list of the names and addresses of the creditors of the transferrer and

certified by him, under oath, to be, to the best of his knowledge and belief, a full, accurate, and complete list of his creditors; and unless the transferree shall, at least five days before such transfer, notify personally, or by registered mail, every creditor whose name and address are stated in said list of the proposed transfer.'' Did the plaintiff in this case demand and receive from Lockhart a written list of the names and addresses of the latter's creditors, certified by Lockhart under oath, to be, to the best of his knowledge and belief, a full, accurate and complete list of his creditors, and did the plaintiff at least five days before the transfer notify in the manner required by the statute every creditor whose name and address were stated in said list of the proposed transfer? The agreed statement of facts clearly shows that he did all of these things, and apparently satisfied the requirements of the statute.

It is urged, however, that inasmuch as the list of Lockhart's creditors received by the plaintiff was not in fact '' a full, accurate, and complete list of his creditors '' and as the plaintiff afterwards learned this, but before the transfer was made, the sale, in consequence, was void. So far as Chapter 387 is concerned we do not think this fact affects the situation. The statute declares the sale void *only* on the failure of the purchaser to do what is required of him. It does not declare the sale void if the list of creditors furnished by a vendor under oath is not in fact '' full, accurate and complete.'' It does not in any way make the purchaser responsible for any incorrectness in the list. We think it would be unreasonable to so construe it. See *Coach* v. *Gage,* 70 Ore. 182, 188; *International Silver Co..v. Hull & Co.,* 140 Ga. 10, 12.

The Oregon statute is more stringent than ours in that if the purchaser pays any part of the purchase price before demanding and receiving the sworn list of creditors and before notifying the creditors named in the list, the

sale will "be conclusively presumed fraudulent and void" as to such creditors. The statute of Georgia and of some other States is similar in this respect. Under such a statute the transaction now inquired into would be conclusively presumed fraudulent and void in consequence of the payment of the $100 on December 19 and the $1,000 on December 22. The provisions in the statutes of the two States just named relative to demanding and receiving lists of creditors and to notifying them are substantially the same as in our statute. In *Coach v. Gage, supra,* on page 188, the court in interpreting these last provisions, said: " The act in question, in our judgment, imposes upon the purchaser (1) the duty to demand a written statement, under oath, of the vendor of the names and addresses of his creditors, and (2) upon the receipt of such list to notify the persons named therein of the proposed purchase. For an intentional breach of either of these duties, it was entirely competent for the legislature, by way of penalty for such breach, and to secure the faithful performance of such duty, to declare that their nonperformance should constitute conclusive evidence of fraud, and render the sale void as to creditors; but it is not in the power of the legislature to make a breach of duty by the vendor evidence of fraud in the vendee. To hold the law means that an omission of the name of a creditor by the vendor without the knowledge of the vendee renders the transaction void as to him would be to hold that it was the intent of the legislature to ordain that a fraud committed by the vendor upon the vendee by falsifying the list of creditors should be conclusively presumed to be the fraud of the person so defrauded and deceived. Such a construction would be so contrary to every principle of law and good morals that it is inconceivable that the legislature intended it."

And in *International Silver Co. v. Hull & Co., supra,* on page 12, the court said: " If the purchaser demands

from the vendor a written statement, under oath, of the names and addresses of the creditors of the latter, with the amount due or owing by the seller to each of them, and the seller delivers a statement purporting to contain all of his creditors, and the purchaser, in good faith and without any knowledge or notice of the omission of the name of a creditor therefrom, proceeds to comply with the requirements of the statute, there is no declaration that he shall lose his purchase because of the omission by the seller of the name of a creditor." . . . "There is nothing here to show that an omission by the vendor of a creditor from the sworn list should be visited on a *bona fide* purchaser without notice.

"It was argued that the statute required the purchaser not only to demand, but also to 'receive' from the vendor a list of all of the creditors of the latter; and that he had not received a list of all of them if one were omitted. But this is too exacting and verbal a construction. The statute did not make the purchaser a warrantor of the absolute completeness and accuracy of the sworn statement of the vendor, or punish him for the omission from such sworn statement of the name of a creditor, without any fault on his part, or any notice thereof."

This precise question has been considered in few reported cases and most of the cases under statutes in the class to which ours belongs have arisen where the purchaser has not complied with the statute, although both parties may appear to have acted in good faith. In such cases the sale has uniformly been held fraudulent and void. The defendant relies much on *Ribalsky* v. *Levenson*, 221 Mass. 289. The statute of that State as to the demanding and receiving a list of the vendor's creditors and giving such creditors notice is like our own. The facts are meagerly stated in the opinion. But if it is taken to mean that the purchaser did all that was re-

quired of him, but that the vendor made out and delivered an incorrect list of creditors, although acting in good faith, and that in consequence the sale was void, we decline to follow it as an authority. As, therefore, the plaintiff as purchaser did all that the statute required of him, we are of the opinion that the transfer to him was not fraudulent and void under said Chapter 387.

It may be urged that under the statute as thus interpreted opportunity is afforded a vendor to successfully practice fraud. That is entirely possible. We think the remedy for this situation lies with the law-making body and not with the courts. It is noteworthy that while common observation shows that it is the dealer in merchandise, who for one reason or another, attempts to defraud his creditors by the sale of his stock, our statute, like some others, declares such a sale fraudulent and void only on a failure of the purchaser to do certain things. Chapter 387 is in effect an addition to Section 1 of Chapter 253 of the General Laws relating to conveyances in fraud of creditors. Of course, this transaction like others, is open to inquiry as to the existence of fraud (3) in fact. There is opportunity for collusion in making up the list of creditors, and apart from any active participation in actual fraud, the purchaser might have knowledge of a fraudulent intent of the vendor, so that the question of the purchaser's good faith might be material. We think the words " good faith " as used in some opinions in cases under acts regulating the sale of merchandise in bulk, have reference to this aspect of the case, namely, the existence of fraud in fact.

The question of actual fraud under Chapter 253 has not been argued, although the defendant's brief near the end suggests that the court may decide the sale void on the ground that the vendee is not a *bona fide* purchaser for value without notice. We do not, however, feel justified in so deciding the case on the agreed statement of facts.

There is no suggestion that the price paid for the goods was not fair and adequate; the good faith of the purchaser is not impeached; he advertised the proposed transfer in addition to giving the personal notice; he paid all known creditors out of the purchase money; and whatever inferences he might have drawn, from the subsequently ascertained fact that the list of creditors furnished him was incomplete, as to the original intention of the vendor relative to the payment of his creditors, it is admitted that when he paid over to the vendor the balance of the purchase money he had no knowledge that there was any creditor of the vendor who had not been paid. Moreover, it does not affirmatively appear that Lockhart is not able to pay any judgment that Alphonso Brickett may obtain against him, or that he has not property on which such a judgment might be levied.

In these circumstances it is our judgment that the sale by Lockhart to the plaintiff should not be held to be in fact fraudulent and void as to said Alphonso Brickett as a creditor of Lockhart.

Our decision accordingly is that the plaintiff acquired a good title to the goods and chattels transferred to him by Frank S. Lockhart on December 27, 1916, and that he is entitled to the entry of judgment for their possession.

The papers in said cause with our decision certified thereon are ordered to be sent back to the Superior Court for the entry of final judgment upon the decision.

*Archambault & Archambault,* for plaintiff.
*Sullivan & Sullivan,* for defendant.