McKELVEY v. JOHN SCHAAP & SONS DRUG COMPANY.

Opinion delivered April 26, 1920.

1. SALES—MISREPRESENTATION—EVIDENCE.—In an action by a vendor of a retail drug business on notes given for the purchase money, evidence *held* insufficient to show false representations either with respect to the amount of stock or the daily sales.

2. FRAUDULENT CONVEYANCES—BULK SALES LAW—LIABILITY OF PURCHASER.—Under Bulk Sales Law, the purchaser of a retail business who in good faith demanded and received a list of creditors from the vendor is not liable where the latter, either by fraud or inadvertence, omitted the name of a creditor.

3  FRAUDULENT CONVEYANCES—BULK SALES LAW—INVENTORY.—Failure of the vendee of a stock of goods to take an inventory of the goods sold in bulk to such vendee in good faith will not render him liable to a creditor of the vendor whose name was not listed.

4. FRAUDULENT CONVEYANCES—BULK SALES LAW—CONSTRUCTION.—The Bulk Sales Law does not create a lien on property which follows it into the hands of subsequent purchasers, but it makes a purchaser in violation of the statute liable as a receiver to the extent of the value of the goods purchased.

Appeal from Benton Chancery Court; *Ben F. McMahan,* Chancellor; reversed as to Meyers and Barr; affirmed as to McKelvey.

*W. N. Ivie, H. L. Pearson* and *Walker & Walker,* for appellants.

1. Neither the original nor amended complaint stated a cause of action within the jurisdiction of the chancery court as a vendor of personal property has no lien thereon for the purchase money. 104 Ark. 130.

2. The court overruled the motion to strike. It is error to permit an amendment which changes or sets forth a separate and distinct cause of action from that alleged in the original complaint. 102 Ark. 20; 85 *Id.* 246.

3. The cross bill of McKelvey should have been sustained. A fair preponderance of the evidence shows false representations amounting to fraud and deceit. 35 L. R. A. (N. S.) 175-6, L. R. A. 1916 F, 182; 47 Ark. 335; 55 *Id.* 296; 131 S. W. 955; 133 *Id.* 458; 138 *Id.* 1003; 135 Minn. 333; 160 N. W. 860; 23 Cyc. 353-4. The false representa-

tions as to the amount of business done was an actionable fraud. 115 N. W. 964; 15 L. R. A. (N. S.), 1092.

4. A defrauded party does not owe the one who defrauds him the obligation to use due diligence to discover the fraud. 99 Ark. 438; 128 S. W. 1003. The doctrine of *caveat emptor* applies. See 47 Ark. 335; 55 *Id.* 296; 96 *Id.* 371; 97 *Id.* 265; 98 *Id.* 44. Here the false representations were not made with intent to induce appellant to act thereon.

5. Appellant Meyers was not liable nor was Barr, as the sale was not void under the Bulk Sales Act. 95 Atl. 788; 201 Fed. 169; Acts 1913, p. 326; 84 Ark. 172; 36 *Id.* 612; 93 *Id.* 57; Bales on Partnership, § 566; 79 Ark. 113; 145 S. W. 1076.

6. Mrs. Barr was an innocent purchaser and not liable. 87 Wash. 447; 151 Pac. 800; 95 Atl. 788; 39 L. R. A. (N. S.) 374; 76 Am. St. 178; 60 N. H. 169; 49 Atl. 572; 64 *Id.* 767; 81 N. E. 297.

*Tom Williams* and *John W. Nance,* for appellees.

1. The court did not err in overruling the motion to strike, and there is no error in the decree as to McKelvey. 200 S. W. 1018, 196 S. W. 119.

2. There was no error as to Meyers. The Bulk Sales Law was not complied with in any respect, no inventory was taken, the creditors of McKelvey were not notified, and the list of creditors did not include the name of appellees. 136 Ark. 623; 134 *Id.* 241; 207 S. W. 439; 206 *Id.* 139.

3. There was no error as to Mrs. Barr. She purchased the stock without complying with the Bulk Sales Law in any particular. 125 Ark. 181.

McCulloch, C. J. Appellee has for many years been engaged in the wholesale drug business in the city of Fort Smith, and in the year 1914 it acquired by purchase at a sale made by trustee in bankruptcy a stock of goods and fixtures and other paraphernalia of the business in Rogers, Arkansas. The Rogers business was operated under the name of the Palace Drug Store, and

appellee continued to so operate the business for a time until August 4, 1914, when it sold the business to appellant, A. A. McKelvey. The purchase price on the sale of the business in Rogers by appellee to McKelvey was the sum of $7,000, of which $4,800 was paid by the conveyance of a farm by McKelvey and wife to appellee, and the sum of $200 evidenced by promissory note, and the balance of $2,000 evidenced by two promissory notes, each for $1,000, payable, respectively, one and two years after date.

McKelvey paid the $200 note, but failed to pay anything on the other two notes, and appellee instituted this action against McKelvey in the chancery court of Benton County on May 3, 1917, to recover the amount of said notes and to enforce an alleged vendor's lien on the remainder of the stock of drugs sold. The action was personal against McKelvey, and there was no process by attachment or otherwise issued to seize the property on which the lien was asserted. On August 7, 1914, McKelvey and his wife and A. H. West, his son-in-law, entered into a copartnership agreement for the operation of the drug business in Rogers. The contract is exhibited in evidence in this case and recites the consideration furnished by each of the copartners and the terms upon which the business was to be operated. The contract did not contain any express assumption by the copartnership of the indebtedness to appellee.

On September 11, 1917, which was after the commencement of this action, the drug store and fixtures and the business pertaining thereto was sold in bulk by said copartnership to W. P. Meyers. A verified list of creditors of the copartnership was furnished to Meyers and all of the debts thus listed were paid in full, but the list did not contain the debt to appellee evidenced by said notes. A few months later, and while the action was still pending Meyers sold the drug store to Mrs. I. J. Barr, the sale being in bulk, and there being no attempt to comply with the statute with respect to taking inventory and furnishing verified list of creditors. When

these sales came to the knowledge of appellee, Meyers and Mrs. Barr were joined as defendants in the suit, and liability against them was sought on the ground that the respective sales to them were made in violation of Act No. 88 of the legislative session of 1913, known as the Bulk Sales Law. Appellant McKelvey answered and sought to defend the action on the ground that the purchase of the drug store by him from appellee was induced by false and fraudulent misrepresentations of agents of appellee concerning the quantity and value of the stock of goods and also concerning the volume of business done. The answer was made a cross-complaint asking for the cancellation of the notes.

Appellants Meyers and Mrs. Barr each answered, denying violation of the Bulk Sales Law and denying the charge of fraud in their respective purchases of the drug business. On the final hearing of the cause the chancellor rendered a decree in favor of appellee against appellant McKelvey for the amount of each of the notes, with interest, and also holding Meyers and Mrs. Barr liable under their purchase of the stock of goods and business.

The first question to be discussed is that which relates to the appeal of McKelvey from the decree against him. His contention is that the decree was against the preponderance of the evidence, in that it was shown that appellee procured the sale by false and fraudulent misrepresentations. There is a sharp conflict in the testimony, and we can not say that the evidence preponderates against the finding of the chancellor on that issue.

McKelvey was a physician residing at Greenwood, in Sebastian County, and, as above stated, appellee and its agents and officers were operating a wholesale drug business in Fort Smith. Appellee was a creditor of a copartnership which formerly owned the drug business in Rogers and purchased the drug store at the bankruptcy sale, bidding the sum of $3,900. Appellee operated the business for a time, but made continuous efforts to sell the business and finally got in touch with Doctor McKelvey, who became interested, and a sale to him re-

sulted. Mr. John Schaap, acting for appellee, offered the business to Doctor McKelvey for $7,000, without taking an inventory, or to let him have it at invoice price if he preferred to taken an inventory before purchasing, and stated to him that in his opinion an invoice would amount o as much as $8,000, or, putting it in other words, that he had about that much in the business. The testimony shows that while appellee had only bid $3,900 for the stock of goods and fixtures at the bankruptcy sale, the amount expended in replenishing the stock and the additional unpaid amount of indebtedness against the old copartnership which appellee considered in computing the amount of his investment in the business ran up around a total of $8,000.

Doctor McKelvey was given every reasonable opportunity to inspect the stock of goods, and he decided to accept the offer to purchase the goods at $7,000 without taking inventory. On his trip to Rogers to inspect the store, or at least on one of the trips, he was accompanied by Mr. Schaap, and it is claimed that the latter made misrepresentations concerning the large number of cigar boxes which were afterward found to be empty. There is a controversy between the two witnesses on this point, and we can not say that there is a preponderance against the finding of the chancellor that there were not any misrepresentations. During the negotiations Mr. Schaap wrote a letter to Doctor McKelvey urging him to make the purchase and lauding the opportunity to gain thereby a profitable business. In that letter he stated that the daily sales in the business were increasing rapidly, and that the average daily sales then amounted to from $30 to $35 per day. The letter also mentioned the amount of the sales for two days, towit, on July 26 and July 27. There is shown in the evidence the daily sales from the business for a month preceding the writing of the letter, and it appears that the sales were, as represented, increasing rapidly, but had not amounted to an average of $30 per day. There had been such a rapid increase, however, that the inference could reasonably be drawn

that the daily sales would attain that amount in a short time. The record of sales showed that the sales of each Sunday and Monday were entered as one day, and the amount stated in this letter represented the sales entered for those two days as for one day. It was correct, according to the books. The other statement in the letter with respect to the sales of another day was incorrect. It seems that a Mr. Hayes was operating the business at Rogers for appellee and made his reports to Mr. Schaap at Fort Smith.

We do not think the testimony is sufficient to show false representations, either with respect to the amount of the stock of goods or the daily sales. Appellant was given an opportunity to buy the stock at actual inventory, but after examination he elected to accept the proposition to sell at a given sum. The evidence tends to show that according to the inventory taken shortly after the purchase, it amounted to about $1,300 less than the amount of McKelvey's purchase price, but this is not by any means conclusive of the fact that the representations were fraudulently made. Appellee Schaap did not pretend that an inventory had recently been made, but his statement as to the amount of goods and fixtures in the store was only an estimate. As to the statement concerning the amount of daily sales, one of the amounts stated was correct according to the books, and the other was evidently an error, but that is not sufficient to show a false misrepresentation as to the average daily sales.

Appellant continued to operate this business for over three years, and according to the testimony adduced by appellee, he made no claim that there had been misrepresentations in any respect. He testified that a short time after the purchase he went to Fort Smith and complained to Mr. Ben Schaap, who was also connected with appellee's business, and asserted that there had been misrepresentations in the particulars mentioned, but this is denied by Schaap, and it can not be said that the evidence preponderates against the finding of the chancellor. Schaap testified that appellant McKelvey made no com-

plaint except that the business was not turning out satisfactorily, and that he offered to take appellee in as a partner in the business in consideration of the cancellation of these notes. The fact that Doctor McKelvey continued to operate the business for several years without complaint is a potent factor in determining the question whether or not the purchase by him was induced by false representations. Upon the whole, we are not prepared to say that the decision of the chancellor was wrong, and it therefore becomes our duty to affirm the decree, which will be done so far as it relates to recovery by appellee from appellant McKelvey of the amount of the notes and interest.

Different questions, however, are presented on the appeals of Meyers and Mrs. Barr. There is not sufficient evidence to warrant the finding that either of them participated in any fraud in the purchase of the stock of goods. On the contrary, it tends to show that they purchased in good faith. Their liability, if any exists, must rest upon the provisions of the Bulk Sales Law. That statute provides in substance that all sales in bulk of stocks of merchandise, etc., shall be void as against creditors of the seller unless the seller and the purchaser shall make an inventory and preserve the same, and unless the purchaser shall demand and receive from the seller a verified list of the names and addresses of the creditors of the seller, and that notice of the sale be given to each creditor ten days in advance. Section 3 of the statute reads as follows:

"Any purchaser, transferee or assignee who shall not conform to the provisions of this act shall, upon application of any creditor of the seller, transferrer or assignor, become a receiver and be held accountable as such to creditors for all goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale, transfer or assignment; provided, however, that any purchaser, transferee or assignee who shall conform to the provisions of this act shall not be held in any way accountable to any creditor of the seller, transferer or as-

signor for any of the goods, wares, merchandise or fixtures that may come into his possession by virtue of such sale, transfer or assignment.''

It is unimportant to consider the effect of the organization of the copartnership between McKelvey and his wife and West, to take over and operate the business. The authorities seem to be divided on the question whether or not the formation of a corporation or copartnership for the purpose of taking over and operating a business, or whether a sale of an interest in a business, falls within the operation of the Bulk Sales Law. The authorities on that subject are collated in L. R. A. 1917 D, page 623, and in L. R. A. 1918 C, page 932.

In any event, appellant Meyers is liable, if at all, on his failure to comply with the Bulk Sales Law, and the undisputed evidence is that there was a compliance with the law on his part with respect to demanding and receiving a list of the creditors of his vendor. It is true that the debt to appellee was not listed, but the statute is not fairly open to the construction that a purchaser who, in good faith, demands and receives a list of creditors should be held liable where the vendor has either by fraud or inadvertence omitted the name of a creditor. The authorities seem to be unanimous so far as they go in holding that under such circumstances the vendee is not liable. *Glantz* v. *Gardiner,* 40 R. I. 297, L. R. A. 1917 F, p. 226; *Coach* v. *Gage,* 70 Ore. 182, 138 Pac. 847; *International Silver Co.* v. *Hull,* 140 Ga. 10, 45 L. R. A. (N. S.), 492.

It is said in those cases that it would be unreasonable to construe the statute to mean that a purchaser would be held liable on account of the omission of the name of a creditor, notwithstanding his entire good faith, and that such an interpretation would render the statute void as an impairment of the right to contract. We think it is a reasonable interpretation of the statute to say that if the purchaser proceeds in good faith he is not liable, notwithstanding omissions from the list of creditors. There is nothing in the present case to show bad faith

on the part of Meyers. It does not appear that he had any information that appellee claimed to be a creditor of the copartnership from which he made the purchase, or that he was informed that appellee had any claims against the copartnership, or even against McKelvey. He demanded and received a list of creditors, and all of the debts so listed were paid in full. It is true there was no inventory made in accordance with the requirement of the statute, but no liability can be predicated on the failure to take an inventory where there is a verified list of creditors furnished in accordance with the statute and all of the debts so listed are paid out of the purchase price. This, of course, is dependent upon the good faith on the part of the purchaser, for if he is lacking in that respect, he can not escape liability on account of an omission of any creditor from the list, and the requirement as to inventory would be applicable. The statute imposes on the purchaser as well as the vendor the duty to make and preserve an inventory, but it does not specify the length of time the inventory must be preserved. Manifestly, the intention was to provide for preservation of the inventory as long as it can be of reasonable use to creditors whose rights are disregarded in making the bulk sale. If the inventory could not be available to a creditor the reason ceases for treating the failure to take or preserve the inventory as ground for avoiding the sale. The requirement is mandatory, but, giving the statute a reasonable interpretation, the failure to take an inventory does not render the sale void except as against creditors who are in an attitude to assert claims against the purchaser— that is to say, creditors whose claims have been listed or are otherwise made known to the purchaser. The design was to require notice to creditors in advance and to require the preservation of an inventory for the benefit of the creditors so that they could, when so notified, readily ascertain before the consummation of the sale the quantity and value of the things sold. It follows, therefore, that the statute affords no protection to unlisted creditors

who are unknown, before the consummation of the sale to a purchaser acting in good faith.

Our conclusion, therefore, is that Meyers is not liable under the statute, and, of course, if he is not liable, Mrs. Barr is also free from any liability. The Bulk Sales Law does not create a lien on property which follows it in the hands of subsequent purchasers. *Kasper* v. *Spokane Merchants' Association,* 87 Wash. 447. It merely makes a purchaser in violation of the statute liable as receiver to the extent of the value of the goods purchased. *Stuart* v. *Elk Horn Bank & Trust Co.,* 123 Ark. 285; *Morris-Morton Drug Co.* v. *Glenwood Drug Co.,* 127 Ark. 296; *Heldman Clothing Co.* v. *Oates,* 135 Ark. 252.

The decree against McKelvey is, therefore, affirmed, but as to appellants, Meyers and Mrs. Barr, the decree is reversed and the cause is dismissed.