J. J. HRONIK, Trustee, Appellant, v. I. WARTY, Appellee.

JANUARY 10, 1928.

REHEARING DENIED APRIL 5, 1928.

*J. J. Hronik*, for appellant.

*McCoy & Beecher*, for appellee.

DE GRAFF, J.—This is a suit, as indicated in the statement, by a trustee in bankruptcy against a purchaser of merchandise from the bankrupt. The pertinent question for decision involves the interpretation and application of the provisions of the so-called Bulk Sales Law of Iowa to the record facts.

In brief, was there a substantial compliance with the statutory provisions in making the sale in question? At the outset, it may be observed that the plaintiff filed a motion to strike the defendant's answer, as amended. This was, in legal effect, an equitable demurrer, under Section 11130, Code of 1924. Although the plaintiff specifies and argues as error the overruling of this motion, we prefer to rule the case on the merits, as the same result will be reached.

In the first instance, it may be well to glance, for a moment, at the factual side. The defendant (appellee) was a resident of Waterloo, Iowa, and was engaged in the retail paint and wall-paper business in said city. In May, 1923, he learned from a traveling salesman that one Fred Murray, a resident of Cedar Rapids, Iowa, who was also engaged in retailing paint and wall paper in that city, was desirous of selling his stock of merchandise. Through telephone communication, Murray and the appellee, Warty, who were strangers to each other, agreed to meet in Cedar Rapids on the following day. They did meet, and Warty proceeded to investigate the wall paper

that Murray had for sale. Murray invoiced the paper to Warty by counting to him the rolls. Warty was told that the paper had been bought in a two-carload lot, and an offer was made to sell Warty the paper at three cents a roll. Under the tentative agreement, Warty had the privilege of taking as much of the paper as he desired. This was on Sunday, and for that reason the parties agreed that the bargain would not be concluded until the next day.

On Monday morning, Murray and Warty proceeded to count out the rolls of wall paper, which was then placed on board a freight car, and consigned to Warty at Waterloo. This was done before there was any attempted compliance with the provisions of the Bulk Sales Law. It is stipulated that this sale was not in the ordinary course of Murray's trade or in the regular prosecution of his business, and that both parties had knowledge of the Bulk Sales Law of Iowa. It is also shown that, during these negotiations, the purchaser Warty made inquiry of Murray whether anything was owing on the stock of paper, and he was told by Murray that nothing was owing, as he had bought it on a C. O. D. basis. The evidence is in conflict whether the purchaser Warty, prior to the purchase transaction, made inquiry as to the creditors other than merchandise creditors.

Warty did enter into an agreement to purchase 28,370 rolls of paper at three cents a roll. Thereupon, Murray and Warty, on the suggestion of the latter, went in search of an attorney, in order to have papers prepared that would comply with the provisions of the Bulk Sales Law. They found their way into the office of an attorney who was not acquainted with either party. At the instance and request of Warty, the said attorney prepared a bill of sale, conveying the said stock of merchandise, and also an affidavit, which was executed by Murray.

At the time the affidavit was delivered, Warty paid to Murray the agreed purchase price, and the transaction was considered closed. A few weeks later, Murray disappeared.

In July, 1923, an involuntary bankruptcy petition was filed against Murray, and he was duly adjudged a bankrupt. At the first meeting of creditors, the plaintiff herein was elected trustee of the bankrupt estate. The stock of merchandise which came into the hands of the trustee produced about $718, and

constituted the entire assets of the estate, except the claim against the defendant herein. Murray did, in fact, have creditors at the time of the sale to Warty, and was indebted to them in the sum of about $2,700.

We now turn to the legal propositions involved in the specifications of error which have to do with the application of the Bulk Sales Law to the record facts. It is obvious that the purpose of enacting this statute was to reach sales or transfers of personal property which were made with a fraudulent intent on the part of the seller, but which could not be impeached under the law of fraudulent conveyances, since in the latter it is so frequently impossible to prove that the purchaser acted with fraudulent intent.

The very purpose of the act is to give publicity to those who have the right to know of intended sales, and to prevent clandestine and quickly made sales. *Stuart v. Elk Horn Bank & Tr. Co.*, 123 Ark. 285 (185 S. W. 263).

The object of the legislature in enacting the Bulk Sales Law was to protect creditors of retail merchants against fraudulent sales by the debtors of their stocks and merchandise. *Gorman v. Hellberg*, 190 Iowa 728. A sale or transfer that is made without a substantial compliance with the terms of the act is voidable, as against creditors of the seller. *Carnall v. Kramer*, 194 Iowa 359. If a purchaser is willing to assume the chances that there are no unpaid creditors of the seller, without exacting the affidavit required by the statute, he must bear the consequences. *Pratt Paper Co. v. Eiffler*, 196 Iowa 199. We are not dealing here with the mere verbal statement of the seller that he had no creditors, if it be conceded, *arguendo,* that such statement was made by the seller to the purchaser prior to the making of the affidavit. See *Peck v. Hibben,* 185 Ind. 623 (114 N. E. 216).

In the application of the Bulk Sales Law, some courts make a distinction between an attempt to comply therewith and no compliance, and in the former the sale is held to be presumtively invalid, "the presumption being slight or strong, according to the nature and extent of the failure and the circumstances of it." *National City Bank v. Huey & Martin Drug Co.*, 113 S. C. 333 (102 S. E. 516).

We therefore inquire, What did the purchaser (appellee

herein) fail to do? What does our statute require to be done? We shall answer the last question first. It is provided that:

"The sale * * * in bulk, of any part or the whole of a stock of merchandise * * * otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller * * * shall be void as against the creditors of the seller * * * :

"2. Unless the purchaser * * * demand and receive from the seller * * * a written list of names and addresses of the creditors of the seller * * * with the amount of the indebtedness due or owing to each and certified by the seller * * * under oath, to be a full, accurate, and complete list of his creditors, and of his indebtedness; and

"3. Unless the purchaser * * * shall, at least seven days before taking possession of such merchandise, * * * or paying therefor, notify personally or by registered mail, every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms, and conditions thereof." Section 10008, Code of 1924.

"Any purchaser * * * who shall not conform to the provisions of this chapter shall, upon application of any of the creditors of the seller * * * become a receiver and be held accountable to such creditors for all the goods * * * that have come into his possession by virtue of such sale * * * ." Section 10011, Code of 1924.

"Any purchaser * * * who shall conform to the provisions of this chapter shall not be held in any way accountable to any creditor of the seller * * * for any of the goods * * * that have come into the possession of said purchaser * * * by virtue of such sale * * * ." Section 10012, Code of 1924.

Thus reads the law. It is the quite universal holding that substantial compliance with the statute is sufficient to sustain the validity of the sale. 27 Corpus Juris 884.

What did the instant purchaser attempt to do in compliance with statutory provision? Did he comply? There was no inventory prepared, prior to taking possession of the merchandise or paying therefor, for the reason, as argued by appellee, that there were no creditors known to appellee to whom notice could be given. The purchaser did—and, we may assume, in apparent good faith—demand and receive a statement

under oath from his vendor with respect to the creditors of the vendor. It is about this sworn statement that the controlling principle gravitates. The affidavit in question reads as follows:

"I, Fred Murray, being first duly sworn upon oath, depose and say that I am the vendor in a bill of sale executed the 21st day of May, 1923, conveying to I. Warty, 28,370 rolls of wall paper, and that said conveyance represents the sale and transfer of a large part of the stock of trade on hand and is otherwise than in the ordinary course of trade and not in the regular prosecution of the business of the said vendor and that in complying with the Bulk Sales Law, as found in the Thirty-seventh General Assembly, Chapter 64 and the acts which it amends, namely, 2911 A and 2911 B, of the Supplement of the Code of 1915, this affiant states that the goods conveyed in said bill of sale are paid for and that there are no creditors existing at the time of the sale who could, by any process of law, obtain any interest in said goods.

"[Signed]   Fred Murray."

It may be observed that the affiant stated "that the goods conveyed in said bill of sale are paid for." Had the affidavit stopped at this point, it would have been clearly insufficient, since the law contemplates a written list of names and addresses of all the creditors of the seller. The affidavit, however, further recited that:

"There were no creditors existing at the time of the sale who could, by any process of law, obtain any interest in said goods."

This was a mere legal conclusion. In fact, it was a warning to the purchaser that there were creditors. We cannot view the modifying clause following the word "creditors" as mere surplusage. It was sufficient to put a reasonably prudent person upon inquiry. It was a qualified and restricted declaration, which conveyed the intimation or implication that there were other creditors. The Bulk Sales Statute must be strictly construed, although, as said in one decision, must not be construed so strictly as to lead to inequitable or nonsensical results. *Thompson v. Nakamura,* 128 Wash. 637 (223 Pac. 1055).

One essential ingredient in the definition of "a good-faith purchaser" is that he shall comply with the statutory provisions hereinbefore quoted. *Butler Bros. v. Mason,* 47 S. D.

308 (198 N. W. 560). It was urged by the appellant in the case supra that the purchaser did not give notice to creditors. The affidavit recited that the seller was not indebted to anyone "on account of said stock of fixtures," and it was claimed that this statement was a compliance with the law. The court said:

"The obvious answer to respondent's contention is that respondent was under no obligation to purchase the property if the seller did not comply with the law. It seems to us too plain for argument that a declaration by the seller that he is not owing anyone 'on account of said stock of fixtures' utterly fails to comply with the statute which requires a list of names of all creditors. Fitzhugh v. Munnell, 92 Ore. 47 (179 Pac. 679). The clear intent of the act is that, if there are no creditors, the seller shall so state in writing. The purchaser, when tendered such partial declaration, should have refused it, and, in order to protect himself, should have refused to complete the purchase until he received a list of all creditors or a declaration in writing that there were none. Surely this must be so, else a purchaser would be protected even though the seller neither furnished a list of creditors nor a statement that there were none. * * * Nor should one be permitted to successfully contend that the present purchaser, receiving the qualified and restricted declaration, was a purchaser in good faith."

In *Interstate Shirt & Collar Co. v. Windham*, 165 Mich. 648 (131 N. W. 102), the sole question submitted for the consideration of the court was whether the affidavit met the requirement of the statute, which contained the same requirements as in the statute of Iowa. It was argued that the verified statement, "the stock was entirely free from debt," should be construed to mean that the seller had no merchandise creditors. This construction was not accepted by the court, and it was held that it was not the equivalent of saying that there were no liens against the stock, or that he had no creditors.

To the same effect is the case of *Joplin Supply Co. v. Smith*, 182 Mo. App. 212 (167 S. W. 649). The respondent vendee contended that he had complied with the provision of the law in his state that "the goods were free and clear of incumbrance." The court said:

"This, however, falls short of the necessary list of creditors, as is contemplated by Section 1 of the act. This provision

in the bill of sale by no means informs the vendee that the vendor has no creditors. * * * Limitations by implication are not favored by the courts, and it is their duty, if possible, to construe the acts and parts of acts so as to give all an operative force."

In the case at bar, the appellee cannot claim protection by reason of the fact that he did, prior to receiving the affidavit, in apparent good faith, go to an attorney, who, with the statute in question before him, questioned the vendor in the language of the statute. The fact that the answer made by the vendor satisfied the attorney is no basis for the claim that the statute in question has been satisfied. The vendor lied; and, had the affidavit been prepared in such a form as to comply with the statute, the vendee would have been protected, even though the vendor could have been successfully prosecuted for the crime of perjury.

The chief test of the sufficiency of an affidavit is whether it is so clear and certain that an indictment for perjury may be sustained on it, if false. The statement in an affidavit of mere matters of opinion or of legal conclusion is not sufficient. 2 Corpus Juris 348.

In the instant case, the most that can be said of the affidavit is that it contains an assurance that the goods are paid for, and that in the seller's opinion there are no creditors who could interfere with or prevent the sale. This statement unmistakably implies the existence of unpaid creditors. There can be no doubt that, even if the statement were false, as it was in this case, the affiant would not be guilty of perjury in making it.

We are not dealing with an incomplete list of the seller's creditors, or a case in which the seller, either by fraud or inadvertence, omitted the name of a creditor. *McKelvey v. Schaap & Sons Drug Co.*, 143 Ark. 477 (220 S. W. 827) ; *Glantz v. Gardiner*, 40 R. I. 297 (100 Atl. 913).

With this view of the law with respect to the controlling proposition, we deem it unnecessary to comment on other brief points. The decree entered is—*Reversed.*

EVANS, ALBERT, MORLING, KINDIG, and WAGNER, JJ., concur.