GRIFFIN *v.* PURYEAR-MEYER GROCER COMPANY.

4-6373                                        151 S. W. 2d 656

Opinion delivered May 19, 1941.

*Bon McCourtney* and *Claude B. Brinton,* for appellant.

*A. A. Robinson, Kirsch & Cathey* and *Robert Harvey,* for appellee.

MEHAFFY, J.   One J. L. Barnett owned a small retail grocery business in Craighead county, Arkansas, and he sold his stock of merchandise and fixtures in bulk to the appellant, Ellis R. Griffin; the consideration being $263.67.

It is undisputed that at the time the merchandise was sold, Barnett owed to the appellee, Puryear-Meyer

Grocery Company, $57.41, and that he owed appellee, Turner Furnishing Goods Company, $51.85.

This action was instituted by Puryear-Meyer Grocery Company, Inc., against Ellis R. Griffin, purchaser of the stock of merchandise from Barnett, in the chancery court of Craighead county, Arkansas.

The plaintiff alleged in its complaint that Barnett owed it $57.41, and that said Barnett owned and operated a retail grocery store in Brookland, Arkansas, and that the groceries, goods, wares and merchandise were sold to Ellis R. Griffin, the entire stock of merchandise, together with all fixtures, for a sum in excess of $350; that the sale was made without complying in any way with § 6067 of Pope's Digest, and that Barnett did not furnish, nor did the defendant receive, a written list of the names and addresses of the creditors of said Barnett with the amount of indebtedness due and owing to each, certified under oath, and that he did not comply with the Bulk Sales Law.

The Turner Furnishing Goods Company filed an intervention and alleged that said Barnett, at the time of the sale to Griffin, was indebted to it in the sum of $51.85 and prayed that the stock of goods, wares and merchandise sold by Barnett to defendant be impounded to pay its indebtedness. The original plaintiff prayed that Griffin be declared a trustee in possession of said stock of groceries and fixtures.

Ellis R. Griffin filed an answer denying the material allegations and alleged that there was a substantial compliance with the Bulk Sales Law, and that Barnett made assurance to the defendant that there were no creditors; that Barnett was a citizen of Craighead county, head of a family, and entitled under the laws to exemptions in the sum of $500, and that the value of the goods, wares, and merchandise purchased by him, together with all other personal property owned by Barnett, did not exceed the sum of $500, and for that reason the sale was not in violation of the Bulk Sales Law, and prayed that the complaint be dismissed.

Griffin also filed an answer to the complaint of the Turner Furnishing Goods Company which was substantially the same as his answer to the complaint of Puryear-Meyer Grocery Company.

The chancellor entered a decree and rendered judgment against the defendant in favor of Puryear-Meyer Grocery Company in the sum of $57.41 and interest, and judgment in favor of Turner Furnishing Goods Company in the sum of $51.89 and interest. The defendant saved exceptions and prayed an appeal to the Supreme Court, which was granted, and the case is here on appeal.

There is no dispute about the indebtedness of Barnett to the appellees in the amounts for which judgments were given. Griffin testified that he asked Barnett for a list of the creditors, and Barnett answered that he had no creditors except on the ice box, and that he (Griffin) had known of no creditors until about the 14th of May; that Barnett was a married man and lived with his wife, and had no other property except a Chevrolet car on which he owed the sum of $560.

Carl Robins testified that he heard Griffin ask for the creditors, and that Barnett answered that he owed nothing except on the ice box.

Ruben Griffin testified to substantially the same.

The attorneys stipulated that J. L. Barnett was a married man, head of a family, and a resident of Brookland, Craighead county, Arkansas.

Appellant, in his brief, states that he concedes that Barnett owed the money sued for. He also says that there was no strict compliance with the Bulk Sales Law, but it is alleged that he exercised good faith in the transaction, and made a substantial compliance with the Bulk Sales Law.

There was no substantial compliance with the law. In the first place, we think from all the circumstances in the case, when Barnett stated that he did not owe anything except on the ice box, he evidently meant that there were no liens on any of the other property. The Bulk Sales Law not only provides that the purchaser must

demand and receive a written list of the names and addresses of the creditors of the seller, with the amount of the indebtedness due and owing to each, but this must be certified under oath to be a full, accurate and complete list of his creditors and of his indebtedness. The law further provides that at least ten days notice must be given before taking possession of the property. This statute was not complied with, but appellant says he acted in good faith.

It was stated in the case of *Griffin* v. *Batterall Shoe Company*, 137 Ark. 37, 207 S. W. 439: "Under our Bulk Sales Law one who buys a stock of goods without giving notice to creditors, as required in such act, becomes a receiver, and is liable *pro rata* to creditors, although the sale was made in good faith."

Appellant calls attention to the case of *McKelvey* v. *John Schaap & Sons Drug Co.*, 143 Ark. 477, 220 S. W. 827. In that case the court said, among other things: "The Bulk Sales Law does not create a lien on property which follows it in the hands of subsequent purchasers. . . . It merely makes a purchaser in violation of the statute liable as receiver to the extent of the value of goods purchased."

Appellant also calls attention to the case of *Glantz* v. *Gardiner*, 40 R. I. 297, 100 Atl. 913, L. R. A. 1917F, 226. In that case the court said: "that is to say, without any regard to the solvency of the vendor, or the fairness of the purchase price to be paid, or the good faith of the vendor and vendee, and although the transaction may not be fraudulent in fact, it will be fraudulent and void in law so far as the vendor's creditors are concerned unless the vendee or transferee does the things required of him by the provisions of the statute. In other words, in order to guard against the commission of actual fraud in the class of sales with which it deals, the law regulates them by requiring the performance of certain acts in the carrying out of such a sale and declares that the failure to perform these acts will render the transaction fraudulent in law."

Appellant next contends that the property involved was not subject to the Bulk Sales Law for the reason

that it was exempt to the seller, and it is argued that so far as exempted property is concerned, there can be no fraudulent conveyance. Appellant cites the case of *Stanley, et al., v. Snyder, et al.,* 43 Ark. 429.

· Appellant also refers to the case of *Erb* v. *Cole & Dow,* 31 Ark. 554. The statement in that opinion relied on by appellant is expressly overruled in the case of *Blythe* v. *Jett,* 52 Ark. 547, 13 S. W. 137, in which the court said: "In *Erb* v. *Cole & Dow,* 31 Ark. 554, this court decided that it is incumbent on a party who attacks a sale on the ground that it was made to hinder, delay or defraud creditors, 'to show that if it had not been made the goods would have been subject to seizure and sale upon execution.' But after careful examination and consideration, we cannot approve this decision, and are constrained to overrule the same as to the principle announced in the quotation made above."

Every citizen of Arkansas is entitled to exemptions mentioned in the constitution and statutes, but in order to get his property exempt, he must comply with the law. § 7188, *et seq,* Pope's Digest.

If appellant had complied with the Bulk Sales Law by requesting a written statement, sworn to by Barnett, he would doubtless have received a list of the creditors and could then have applied for his exemptions by following the requirements of the statute. This he did not do. Barnett did not testify at all, and there is no satisfactory evidence that his property was worth less than $500. In fact, we think from the evidence and circumstances that it was probably worth considerably more than this amount. At any rate, while two or three witnesses testified that Barnett owned household equipment, there was no attempt to show its value. Barnett could have testified, if called upon, to the amount of his property and its value. The witnesses who did testify did not know the value of his property.

Under our statute a debtor, claiming property to be exempt from execution, is required to make a schedule of all his or her property including moneys, rights, credits, and choses in action specifying the particular property

claimed as exempt under the constitution and file the same with the officer after giving five days notice, in writing, to the opposite party. If he would claim exemption for any of said property, he must bring himself and his property within the exceptions of some statute by proper proof. *Blythe* v. *Jett, supra.* In this case he would have to claim property as exempt and offer proof as to the value of his property.

The appellant wholly failed to comply with the Bulk Sales Law and failed to show the value of all of Barnett's property.

The decree of the chancery court is affirmed.