CHATFIELD *v.* CARTER BROTHERS EQUIPMENT COMPANY.

4-8960                                         223 S. W. 2d 1021

Opinion delivered November 7, 1949.

*David L. Ford,* for appellant.

*Franklin Wilder,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, W. R. Chatfield, owns and operates the Chatfield Implement Company at Sanger, Texas. Appellee, Carter Brothers Equipment Company, is an Arkansas corporation engaged in a similar business at Fort Smith, Arkansas.

Appellant filed this suit against appellee in the Sebastian Chancery Court alleging that L. H. Martin, doing business as The L. H. Martin Tractor & Implement Company in Fort Smith, Arkansas, was indebted to appellant in the sum of $2,839.18 as balance due on the purchase price of two hay balers which appellant sold to Martin in July, 1946, for $5,400; that in November, 1947, L. H. Martin transferred his entire stock of machinery and equipment to the Martin-Carter Tractor & Implement Company, an Arkansas corporation, without complying with the Bulk Sales Law; that the Martin-Carter Co. subsequently changed its name to Carter Brothers Equipment Company; that appellee's stockholders were the principal stockholders in the Martin-Carter Co.; and that appellee's officers and agents knew of the transfer from L. H. Martin to the Martin-Carter Co. and further knew that the Bulk Sales Law had not been complied with by either Martin or the appellee. Appellant asked for cancellation of the transfer and assignment of the stock of merchandise by L. H. Martin to the Martin-Carter Co.; that appellee be declared a trustee in possession of said stock of merchandise; and that appellant be awarded judgment against appellee for the balance due on the L. H. Martin account.

The answer of appellee contained a general denial and alleged that appellant sold the balers to John Pirre, Jr. of Okmulgee, Oklahoma, after representing to said buyer that the balers were new when in fact they were old, used and not in good working order. The

answer admitted the sale and transfer of the stock of merchandise by L. H. Martin to the Martin-Carter Co. in November, 1947, and stated that the Bulk Sales Law had been fully complied with in said sale and transfer.

Trial resulted in a decree denying the relief prayed and dismissing appellant's complaint. The court held that appellee was an innocent purchaser without knowledge of appellant's claim against L. H. Martin; and that appellee had complied with the Bulk Sales Law "to the best of its ability".

The evidence discloses that in October, 1947, L. H. Martin was operating an implement business in Fort Smith and needed additional capital to carry on his business and pay debts. On October 31, 1947, Martin entered into a written agreement with W. H. Carter and Clyde Carter, brothers, in which Martin was to sell the Carters an undivided 2/3 interest in his business for a stipulated cash consideration. It was also agreed that the parties would form a corporation in which each would be the owner of 1/3 of the stock. Pursuant to the agreement, L. H. Martin on November 1, 1947, furnished the Carters with a complete inventory of the business and a verified statement of Martin's creditors and indebtedness in which the alleged debt to appellant was not listed. The Martin-Carter Tractor & Implement Company, a corporation, was duly formed and on November 29, 1947, L. H. Martin transferred and sold all his interest in the L. H. Martin Tractor & Implement Company to the corporation. Notice was given to the creditors named in the verified statement furnished by Martin and all debts listed therein were paid by the corporation. In March, 1948, Martin sold his 1/3 of the stock in the corporation to the Carters and the name of the corporation was subsequently changed to Carter Brothers Equipment Company.

W. H. Carter, who acted for himself and his brother in the negotiations, testified that he knew nothing about appellant's claim against L. H. Martin prior to formation of the Martin-Carter Co. and the transfer of the property to the corporation; that prior to the transfer

he caused an audit to be made of the books of the L. H. Martin Co. and that there was nothing in this audit or the records of the company showing the claim of appellant; and that he learned of the claim for the first time in December, 1947, when appellant came to Fort Smith to collect the claim from Martin.

There is considerable conflict in the testimony as to whether L. H. Martin purchased or authorized the purchase of the hay balers from appellant, but we agree with the chancellor's conclusion that the testimony as a whole indicates the validity of the indebtedness. The evidence is also conflicting as to whether appellant misrepresented the condition of the balers to the agents of L. H. Martin. Martin is not a party to this suit.

The question for determination is whether appellee, Carter Brothers Equipment Company, is liable for the debt of L. H. Martin to appellant under our Bulk Sales Law (Ark. Stats. (1947), §§ 68-1501 to 1504, inclusive). There is considerable division in the authorities as to the applicability of the Bulk Sales Law to transactions whereby a corporation or partnership has been organized to take over and carry on a business. Anno. 96 A. L. R. 1213.

We think the question of appellee's liability in the instant case is settled by the principles announced in *McKelvey* v. *John Schaap & Sons,* 143 Ark. 477, 220 S. W. 827. In that case McKelvey purchased a retail drug business from John Schaap & Sons, but failed to pay two notes given for the purchase price. Subsequently McKelvey, his wife and son-in-law entered into a partnership agreement for operation of the business and sold the business to W. P. Meyers. In deciding that Meyers was not liable for the McKelvey debt this court said: ''It is unimportant to consider the effect of the organization of the copartnership between McKelvey and his wife and West, to take over and operate the business. The authorities seem to be divided on the question whether or not the formation of a corporation or copartnership for the purpose of taking over and operating a business, or whether a sale of an interest in a

business, falls within the operation of the Bulk Sales Law. The authorities on that subject are collated in L. R. A. 1917D, p. 623, and in L. R. A. 1918C, p. 932.

"In any event, appellant Meyers is liable, if at all, on his failure to comply with the Bulk Sales Law, and the undisputed evidence is that there was a compliance with the law on his part with respect to demanding and receiving a list of the creditors of his vendor. It is true that the debt to appellee was not listed, but the statute is not fairly open to the construction that a purchaser who, in good faith, demands and receives a list of creditors should be held liable where the vendor has either by fraud or inadvertence omitted the name of a creditor. The authorities seem to be unanimous so far as they go in holding that under such circumstances the vendee is not liable  .  .  .

"We think it is a reasonable interpretation of the statute to say that if the purchaser proceeds in good faith he is not liable, notwithstanding omissions from the list of creditors. There is nothing in the present case to show bad faith on the part of Meyers. It does not appear that he had any information that appellees claimed to be a creditor of the copartnership from which he made the purchase, or that he was informed that appellee had any claims against the copartnership, or even against McKelvey. He demanded and received a list of creditors, and all of the debts so listed were paid in full .  .  ." See, also, *Swafford* v. *Ketchum*, 177 Ark. 1152, 9 S. W. 2d 806.

So here, appellee's liability, if any, must be predicated upon its failure to comply with the Bulk Sales Law. Assuming, without deciding, the applicability of the Bulk Sales Law, we think the preponderance of the evidence—if not the undisputed testimony—supports the trial court's conclusion that appellee and its predecessor, Martin-Carter Tractor & Implement Company, sufficiently complied with the statute. If fraud was committed by L. H. Martin in omitting the name of appellant as a creditor, there is an absence of proof that the Carters, who were principal stockholders in the cor-

poration, knew anything about the claim at the time of the transfer of the business. It is also undisputed that the purchaser here demanded and was supplied with a verified list of the creditors and indebtedness of L. H. Martin prior to the transfer and that said creditors were notified and their claims promptly paid. On these facts the trial court correctly concluded that appellee was an innocent purchaser, without knowledge of appellant's claim, and complied with the Bulk Sales Law.

Affirmed.

HOLT, J., not participating.