PETER DAMICUS, APPELLEE, V. PATRICK H. KELLY ET AL., APPELLANTS.

FILED JANUARY 16, 1931.   No. 27381.

D. J. Gross, Harry L. Welch and Montgomery, Hall, Young & Johnsen, for appellants.

Ziegler & Dunn and George W. Becker, contra.

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK, District Judge.

EBERLY, J.

This appeal involves the interpretation of the provisions of the Nebraska "bulk sales" statute.  Comp. St. 1929, sec. 36-501.  It appears that certain actions were brought by one Peter Damicus to recover the rental accruing to him under the terms of a written lease with one Nelson and one Smith for the period January to November, 1928, inclusive. Judgments were entered for the plaintiff.  Subsequently garnishment proceedings in aid of execution were had in which Patrick H. Kelly and Edward J. Kelly appeared and were examined as garnishees.  Thereafter, challenging the answers of these parties thus made, this action was brought against them under the provisions of section 20-1030, Comp. St. 1929.

It also appears that, during the period covered by the written lease referred to, Nelson and Smith were the proprietors of a stock of drugs and carried on a retail drug business in Omaha, Nebraska.  In the month of November,

1928, they sold the stock of drugs to the defendants Kelly "in bulk" and "otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business." The present action was prosecuted by the plaintiff on the theory that the Kellys had failed, in the purchase of the drug stock so made, to comply with the provisions of section 36-501, Comp. St. 1929, and were therefore to be deemed trustees in possession of the stock by them purchased for the benefit of the creditors of Nelson and Smith, of whom plaintiff was one. There was judgment for plaintiff in the district court, from which the defendants appealed.

As their first contention, the defendants challenge the sufficiency of the plaintiff's petition. It does not appear that this point was properly presented to the trial court. True, in the amended answer on which the case was tried, as part thereof, the substance of a demurrer is incorporated, but joined to paragraphs containing a general denial and other facts constituting a defense pleaded specially. However, the controlling rule of pleading applicable to the question presented by this record is that, in this jurisdiction, "A demurrer to the petition is not, by the provisions of our Code of Practice, a proper part of the answer filed in a case, and should be disregarded." *Fidelity & Deposit Co. v. Parkinson,* 68 Neb. 319; *Kyner v. Whittemore,* 90 Neb. 188; *Pine-Ule Medicine Co. v. Yoder & Eply,* 91 Neb. 78. The bill of exceptions discloses no demurrer *ore tenus* was interposed by the defendants prior to or during the introduction of the evidence. After the introduction of evidence had been completed and all parties had rested, the defendants moved for an instructed verdict, stating, as one reason for the application, "plaintiff's petition does not state a cause of action against the defendants, or either of them." This motion the district court denied. We are of the opinion that it did not err in so doing. So far as the quoted challenge to the petition is concerned, it was tantamount to a general demurrer *ore tenus* interposed at the conclusion of the evidence. Thus considering it, the language employed by commissioner Albert in *National Fire*

*Ins. Co. v. Eastern Building & Loan Ass'n,* 63 Neb. 698, is controlling and as applied to the instant case approved. Judge Albert, in the case referred to, said in part: "It is first urged that the court erred in overruling the defendant's demurrer *ore tenus.* This demurrer was interposed after both parties had rested. * * * It will suffice, perhaps, to say that had the demurrer been interposed before the introduction of any testimony, or before the parties had developed their respective theories of the case, it should have been sustained. But coming, as it did, at the close of the testimony, we cannot ignore the construction placed upon the petition by the parties to the suit, as evidenced by the answer and the nature of evidence introduced. Interposed at so late a day, the pleading assailed should be scanned in the light of the entire record, and the court should give it such construction as the parties themselves have seen fit to place upon it, although, standing alone, it might not admit of such construction. Viewed in that light, the demurrer, in our opinion, was properly overruled." See, also, *Punteney-Mitchell Mfg. Co. v. Northwall Co.,* 66 Neb. 5. While not intending to create the inference that the petition in the instant case was subject to successful challenge by demurrer at any time, nevertheless the reasons set forth by Judge Albert are otherwise applicable and convincing, and we are of the opinion that no error was committed in sustaining the pleading assailed in the district court.

In the instant case, both plaintiff and defendants moved for instructed verdicts at the close of the evidence. The defendants' motion was denied and the plaintiff's sustained.

It seems conceded that in November, 1928, Nelson and Smith were proprietors of a stock of drugs located in Omaha and carried on a retail drug business at that place. This stock they sold to defendants Kelly in bulk. Under the terms of the Nebraska bulk sales law, such a sale is void as to creditors of the sellers, "unless the purchaser demands and receives from the seller a written list of names and addresses of creditors of the seller, with the amount of indebtedness due or owing to each, and certified by the

seller, under oath, to be, to the best of his knowledge and belief, a full, accurate and complete list of his creditors and of his indebtedness; and unless the purchaser shall, at least five days before taking possession of such merchandise, or paying therefor, notify personally or by registered mail, every creditor whose name and address are stated in said list * * * and of the price, terms and conditions thereof." Comp. St. 1929, sec. 36-501. It seems a list of certain creditors was furnished to the buyers by Nelson and Smith. It did not contain the name of Damicus as an existing creditor, although he was one in fact. It was also expressly by its terms limited to "a complete, full and itemized statement and description of all the creditors, the amounts due said creditors, and the addresses of said creditors, having bills and obligations legally due and unpaid under the bulk sales law of the state of Nebraska, against the drug store owned and operated by said affiants, located at 220 South Fortieth street in the city of Omaha, Douglas county, Nebraska." It is obvious that this language is indefinite; that its true intent and purpose is ascertainable, not alone from the results of a legal expert's investigation, but dependable in part upon facts and circumstances surrounding the transaction which in turn are subject to change and may involve elements not within the control of either party. The words quoted, in connection with the context in which found, contain and express with certainty a limitation which necessarily excludes certain possible classes of creditors, a fact which in itself constitutes fair notice to the purchaser that the creditors therein enumerated and verified might not be "all of the creditors of the seller." The terms of this instrument do not purport to enumerate, in fact, all creditors of the seller, but only to include such of these, whose "bills and obligations" in view of the source of their creation were such as were then enforceable against the drug stock involved, and "each of which was then due and unpaid." Creditors having unmatured bills and obligations were therefore expressly excluded, and nowhere within the limits of the four corners of the instrument un-

der consideration appears anything from which it may be inferred that there were no creditors then possessing unmatured bills and obligations. The statute involved plainly contemplates, and its provisions are mandatory, that the seller shall furnish to the purchaser and the purchaser shall require and exact a list of all the seller's creditors, whether the obligations involved are matured or unmatured and irrespective of the source thereof, all properly verified as such by the seller's oath. Admittedly this was not complied with in the present case.

While the question is not discussed at length in the opinion of this court in *Cech v. Costello*, 117 Neb. 224, it was in fact determined that all creditors (of the sellers) were within the purview and protection of the Nebraska bulk sales act, without reference to the origin or source of their indebtedness. In the case last cited this court awarded relief to a farm hand whose indebtedness was created by his labor on a farm and had no relation to nor connection with the stock of merchandise involved, save and except the owner and seller of the stock of merchandise was the same individual who was indebted to Cech for farm work. It follows, therefore, in the instant case that the terms of our statute in effect require that all creditors of the sellers be so listed and verified as such by the oath of the sellers. The language of the affidavit quoted above contains in effect a limitation which operates to exclude certain possible classes of creditors from the list submitted. The evidence, therefore, unmistakably discloses that the sellers in the instant case gave and the purchasers accepted, as a written list of names and addresses of creditors of the sellers, a list in fact bearing on its face evidence that it was not a complete list, and that all creditors of the sellers were not therein or thereby purported to be listed. Due to the defects thus appearing on its face, this list, as verified by the sellers' oath, cannot be accepted as a compliance with the requirements of the statute to sustain the sale. It was the purchasers' duty in this respect to demand and require a full performance of the sellers' duties under the statute, which would have necessitated the submission by such sell-

ers of a list of their creditors in proper form, with their affidavit showing that they were all of their creditors irrespective of source or maturity of obligation and were in truth and in fact all of the parties to whom they were indebted. It also follows that, the bulk sales act not having been substantially complied with, the purchaser derived no rights therefrom. *Cech v. Costello,* 117 Neb. 224; *Fitzhugh v. Munnell,* 92 Or. 47; *Interstate Shirt & Collar Co. v. Windham,* 165 Mich. 648; *Butler Bros. v. Mason,* 47 S. Dak. 308; *Hronik v. Warty,* 205 Ia. 1111; *Lemen v. Leffringhouse,* 127 Kan. 501.

Nor does the knowledge that Damicus obtained through current rumor as to the fact the sale had been effected, nor the delay which characterized the bringing of this action as disclosed by the record before us, in any manner impair the right of the plaintiff to maintain it. *Cech v. Costello,* 117 Neb. 224.

It would also seem that the form of the notice to creditors which was employed by the Kellys was insufficient under the terms of the statute, in that it wholly omitted reference to or information of "price, terms and conditions" of said sale. However, admittedly no notice of any kind was in fact given Damicus of this sale, so this point is not determined.

In view of the entire record, it would seem that the defendants wholly failed to establish a substantial performance of the requirements of section 36-501, Comp. St. 1929, and that they are therefore to be regarded as having obtained possession of a stock of merchandise pursuant to a purchase thereof in bulk, without having complied with the provisions of section 36-501, Comp. St. 1929, commonly known as the bulk sales law, and as trustees for the benefit of the creditors of their vendors and liable as garnishees. *Home Pattern Co. v. Gore,* 113 Neb. 535; *Cech v. Costello,* 117 Neb. 224.

The judgment of the trial court is therefore

AFFIRMED.