A. F. BOTSFORD, APPELLEE, V. CARL HOLCOMB ET AL., APPELLANTS.

FILED MAY 15, 1934. No. 28959.

*Schaper & Runyan*, for appellants.

*Squires, Johnson & Johnson*, contra.

Heard before GOSS, C. J., GOOD, EBERLY, DAY and PAINE, JJ., and RAPER and TEWELL, District Judges.

DAY, J.

This is a replevin action upon a trial to the court without the intervention of a jury. A judgment was entered in favor of plaintiff and against defendants, from which an appeal was taken to this court.

The case arose in the following manner: J. H. Ottun owned and operated a general merchandise store at Sargent for a number of years. He was indebted to the Sargent State Bank and to several others. He was hopelessly insolvent and started negotiations with one of his creditors to make an assignment for the benefit of creditors. This creditor referred the matter to the Omaha Association of Credit Men who sent an agent to Sargent. An arrangement was made whereby the stock of goods was sold to Botsford, plaintiff in this case and a son-in-law of Ottun. The Sargent State Bank was one of Ottun's creditors and after this sale secured a judgment. A levy was made under an execution issued on this judgment by the defendants, the sheriff and deputy sheriff of Custer county, which precipitated this case.

The determination depends upon whether or not there was a compliance with section 36-501, Comp. St. 1929, commonly known as the "bulk sales law." The defendants contend that the assignment to a Council Bluffs, Iowa, wholesale grocery dealer was by him assigned to the Omaha Association of Credit Men. There is no evidence to support such a finding of fact. The representative of the credit organization apparently acted as a mediator between creditors and Ottun and Botsford. It is urged that the alleged assignment was in fact a sale without a compliance with the law relating to the disposal of a stock of merchandise. Since it appears that there was in fact no such assignment, there was no necessity for an attempted compliance.

The sale of this stock and fixtures (the law does not apply to sales of fixtures, *Lee v. Gillen & Boney,* 90 Neb. 730) was by Ottun to Botsford. The bill of sale was signed by a representative of the Omaha Association of

Credit Men as agent for Ottun. This does not sustain the claim of defendants that an assignment had been made to them.

Since this is a sale by Ottun to Botsford, it is necessary to examine the circumstances under which it was consummated. Botsford made an offer to buy the stock and fixtures. An inventory had been taken by Ottun and McQueen, an employee of the Omaha Association of Credit Men. Instead of making another inventory, Botsford accepted this one as his own. Ottun made a sworn statement, listing his creditors and the amounts he owed them. Botsford was given a copy.

On January 25, 1932, the following notice was sent to the creditors: "You are hereby notified that the undersigned A. F. Botsford of Ainsworth, Nebraska, is purchasing through the Omaha Association of Credit Men, of Omaha, Nebraska, the stock of groceries, invoicing $449.02, and fixtures, invoicing $113, of J. H. Ottun, Sargent, Nebraska, in bulk for the sum of $325. The purchaser will take possession of said property and pay therefor on February 1, 1932. This notice is sent to you in compliance with the bulk sales law of the state of Nebraska. A. F. Botsford (Purchaser)." This notice was received by the judgment creditor for whom the sheriff made the levy involved in this case on January 26, and the sale was consummated, possession taken, and settlement made by Botsford on February 1 following.

Botsford's money went to creditors and not to Ottun. The bank did not get any part of this money for that it would not take it in full settlement of its claim as did all the other creditors. There is no evidence to indicate that any one misled the bank in any way about this transaction. With the notice required by law, it made no objection and took no action to prevent the sale. (1) An inventory was taken; (2) a sworn statement of the list of creditors was made and the amount of all indebtedness, and the sum due each; and (3) five days before taking possession or paying therefor, every creditor listed (in-

cluding the bank) was notified by registered mail of the proposed sale, the price, terms and conditions thereof. This complied substantially with the "bulk sales law." Until this sale was consummated, Ottun was the owner and in possession of the stock of merchandise. There is no evidence of bad faith in the transaction. That the price was reasonable and fair is not questioned. The bank cannot thereafter subject the property to the payment of its judgment. An assessment of the property in the name of Mrs. Ottun instead of Botsford, considered with the evidence relating to the assessment made in the absence of Botsford, Ottun himself disclaiming ownership to the assessor, does not establish that Botsford was not the owner. Botsford as the owner of the stock of merchandise and the fixtures can leave them with whom he sees fit, even his father-in-law Ottun. For remedies when there is no compliance with the "bulk sales law" see *Mutz v. Sanderson*, 94 Neb. 293; *Damicus v. Kelly*, 120 Neb. 588.

The trial court properly decreed that there had been a substantial compliance with the "bulk sales law;" that the property belonged to Botsford and could not be subjected to the payment of a judgment against Ottun.

AFFIRMED.